[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This medical malpractice action was commenced on March 25, 1999, when the defendant physician (Dr. Belniak) was served with the complaint. SeeStingone v. Elephant's Trunk Flea Market, 53 Conn. App. 725, 729-30
(1999). The question raised by his motion for summary judgment is whether CT Page 10503 there exists a "genuine issue as to [the] material fact" of when the plaintiff (Mr. Matteson) discovered the injury allegedly caused by Dr. Belniak's claimed malpractice. If, viewing the evidence submitted by the parties[1] in the light most favorable to Mr. Matteson, "it is quite clear what the truth is" and "any real doubt as to the existence of [a] genuine issue of material fact" is excluded, Miller v. UnitedTechnologies Corp., 233 Conn. 732, 751-52 (1995), the motion for summary judgment must be granted, as long as the moving party is entitled to it as a matter of law. P.B. § 17-49.
General Statutes § 52-584 requires a plaintiff to file suit within two years of discovering an "injury" or be forever barred from suit. The word injury is a term of art in this context. "This court has construed the word "injury" in General Statutes 52-584 . . . to refer to some form of actionable harm. Cats v. Rubinstein, 201 Conn. 39, 45, 513 A.2d 98
(1986). "Actionable harm" occurs when the plaintiff discovers, or in the exercise of reasonable care should have discovered, the essentialelements of a cause of action. Lambert v. Stovell, 205 Conn. 1, 6,529 A.2d 710 (1987). The statute begins to run when the plaintiff discovers some form of actionable harm, not the fullest manifestation thereof. Burns v. Hartford Hospital, 192 Conn. 451, 460, 472 A.2d 1257
(1984)." (Emphasis added.) Merly v. State, 211 Conn. 199, 205-06 (1989).
Dr. Belniak treated Mr. Matteson for a fracture of the tibia. The "injury" alleged in the amended complaint is the doctor's failure to diagnose and treat a "non-union of (the plaintiff's) left tibia in May, 1996", when he was discharged from treatment.[2] It is this alleged failure which Mr. Matteson claims has lead to his damages.
Dr. Belniak argues that Mr. Matteson's admission at his deposition that he went to an attorney on March 11, 1997 with a view toward suing Dr. Belniak because he was still in pain almost one year after being discharged from his care demonstrates that he had "discovered" his "injury" by that time; thus, any action had to have been brought by no later than March 11, 1999.[3] In my view, although it is clear from the deposition excerpts that Mr. Matteson thought he might have a claim against Dr. Belniak when he went to the attorney, that was a far cry from his having discovered "the essential elements of a cause of action". This did not occur until, at the earliest, April 11, 1997, when another doctor told him for the first time that he had, in fact, a non-union of the tibia, after he experienced severe pain and an inability to walk while attending a fair.
"A breach of duty by the defendant and a causal connection between the defendant's breach of duty and the resulting harm to the plaintiff are essential elements of a cause of action in negligence. . . .They are CT Page 10504 therefore necessary ingredients for "actionable harm." Consequently, the plaintiffs' decedent did not have an "injury" as contemplated by the statute until she discovered or in the exercise of reasonable care should have discovered a causal relationship between the defendant's allegedly negligent diagnosis of August, 1979, and subsequent lack of treatment, and the metastasis of her cancer which she discovered on May 1, 1980. Only then did she sustain `actionable harm.'" Id., 44. Mr. Matteson knew none of this on March 11, 1997 when he met with the attorney.[4]
This is essentially the import of Mr. Matteson's affidavit, submitted in opposition to the motion for summary judgment. Dr. Belniak argues that I should disregard that affidavit as a self-serving statement not worthy of belief in view of Mr. Matteson's admission at his deposition that he had already consulted with an attorney on March 11. What Dr. Belniak wishes me to do with the deposition excerpts is to draw an inference from Mr. Matteson's conduct that he already knew of his "injury". But that is the jury's province not mine. "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v.Borkowski, 206 Conn. 495, 500 (1988).
In the cases relied upon by Dr. Belniak the plaintiffs had far more knowledge of the existence of an "injury" than did Mr. Matteson. In Burnsv. Hartford Hospital, 192 Conn. 451 (1984), the plaintiff had been told on November 10, 1975 by the attending physician that the cause of the infection in her son's leg was "contaminated intravenous tubes that hospital staff had placed in the leg. . . ." Id., 456. "By about November 10, 1975, (the plaintiff) became fully aware not only of Bryan's injury but also of its cause." Id. Yet, she brought no action against the hospital until November 1, 1978. Summary judgment for the hospital on statute of limitations grounds was granted by the trial court and upheld by the Supreme Court.
Likewise, in Barnes v. Schlein, 192 Conn. 732 (1984), not only had the plaintiff been told by a physician that additional medical care was necessary to correct for the defendant's care of an injury to her leg, Id., 736, fn. 5, but she had also been told by an attorney that he would bring suit against the defendant. Id., 737, fn. 6. Despite this knowledge in April 1973. the plaintiff waited until December 1995 to file suit. Id., 739. Under these circumstances a motion plaintiff waited until December 1995 to file suit. Id., 739. Under these circumstances a motion for summary judgment was properly granted.
Dr. Belniak has not met his burden of showing that there is no genuine issue of material fact as to when Mr. Matteson discovered his injury. Moreover, even if the deposition excerpts and other exhibits are given CT Page 10505 the effect he claims for them, it is not at all clear that he is entitled to judgment as a matter of law. See Catz v. Rubinstein, supra,201 Conn. 49. Accordingly, the motion for summary judgment is denied.
BY THE COURT
SHORTALL, J.